UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM ARTHUR VANWYCK,

        Plaintiff                           Civil Action No. 11-11464

v.                                   HON. DENISE PAGE HOOD
                                         U.S. District Judge
                                         HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL             U.S. Magistrate Judge
SECURITY,

        Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>

      Plaintiff William Arthur Vanwyck brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #13] be DENIED and Plaintiff's motion [Doc. #8] GRANTED to the extent that the case be remanded to the administrative level for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).[1]

---

[1]The district court's authority to remand a case for further administrative proceedings is found in § 405(g). *Hollon v. Commissioner,* 447 F.3d 477, 482-83 (6th Cir.2006). Sentence four of that section provides that "[t]he Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand which does not grant benefits, but orders further administrative proceedings, must be done in conjunction with a final judgment. *See Shalala v. Schaefer*, 509 S.Ct. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (a sentence four remand requires entry of judgment); *Melkonyan v. Sullivan,* 501 U.S. 89, 101-02, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (a final judgment must accompany a sentence four remand order); *Berkowski v. Commissioner of Social Sec.*, 652 F.Supp.2d 846, 849 (E.D.Mich.,2009)

## PROCEDURAL HISTORY

On February 6, 2007, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability as of February 24, 2003 (Tr. 37). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on March 3, 2009 in Flint, Michigan before Administrative Law Judge ("ALJ") John L. Christensen (Tr. 229). Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Stephanee Leech (Tr. 234-246, 247-250). On June 29, 2009, ALJ Christensen found that Plaintiff was not disabled (Tr. 20). On February 1, 2011, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on April 6, 2011.

## BACKGROUND FACTS

Plaintiff, born March 7, 1971was 38 when the ALJ issued his decision (Tr. 37). He completed one year of college and worked previously as a material handler, carpet installer, meter installer, mover, car stereo installer, water purification installer, auto mechanic, and tow truck driver (Tr. 44, 72). He alleges disability as a result of a head injury, neck pain, headaches, and an enlarged heart (Tr. 68).

### .    Plaintiff's Testimony

Plaintiff testified that he currently lived in Flint, Michigan with his sister and niece (Tr. 234). He stated that he stood 5' 11" and weighed 210 pounds (Tr. 235). He admitted to occasional alcohol use (Tr. 235). Plaintiff reported that he had not worked since receiving a head injury (Tr. 236). He admitted that his driver's license was currently suspended, but

---

("the remand must be made post-judgment pursuant to sentence four of 42 U.S.C. § 405(g)"); *Siuta v. Commissioner of Social Sec.*, 2009 WL 275732, 1 (E.D.Mich. 2009) ("A judgment must be entered immediately with a sentence four remand and the district court does not retain jurisdiction during the administrative proceedings on remand" (citing *Melkonyan, supra*). Indeed, a prevailing lawyer in a sentence four remand cannot apply for attorney fees under the Equal Access to Justice Act ("EAJA") unless and until judgment is entered. *Shalala v. Schaefer, supra*.

denied alcohol related traffic infractions (Tr. 236). He denied military service or vocational training (Tr. 237). He stated that the State of Michigan paid him $230 each month to take care of his mother who experienced a bipolar disorder (Tr. 237). He stated that his duties were emotionally strenuous but that other family members took care of his mother's physical condition (Tr. 238).

Plaintiff reported that he experienced neck, shoulder, and radiating back pain as a result of the head injury (Tr. 238). He opined that his physical limitations prevented him from performing any of his past relevant work (Tr. 239). Plaintiff alleged that even if his physical problems were accommodated with a job allowing for a sit/stand option, the conditions of anxiety and anger management problems would preclude all work (Tr. 240). He stated that he was unsure whether he was even capable of performing work that did not require significant lifting or interaction with others (Tr. 240).

In response to questioning by his attorney, Plaintiff testified that he stopped seeing a neurologist after his health insurance was discontinued (Tr. 241). He alleged constant headaches, quantifying his pain as a "2 and 3" to "10" on a scale of 1 to 10 (Tr. 241). He reported that his head injury was the cause of his anger management problems, stating that since the accident, he lost his home (Tr. 242). He also reported that he had difficulty concentrating and experienced interrupted sleep (Tr. 242-243). He stated that sleep problems created daytime sleepiness (Tr. 245). He alleged left arm numbness (Tr. 243). He admitted to grocery shopping and performing household and yard chores with the help of his family (Tr. 243). He stated that he currently took pain medicine and Xanax for anxiety (Tr. 244). He stated that fatigue obliged him to take daytime naps at least twice a week (Tr. 246). He stated that he had received injections in the head and back for pain (Tr. 246).

-3-

### B.   Medical Evidence

### 1.  Treating Sources

Plaintiff requested a medical leave from work after being struck in the head with a 40-pound object in February, 2003 (Tr. 107).  An MRI of the brain taken the month after the accident was unremarkable (Tr. 175).  George Mohamedally, D.O. wrote a series of work releases between March, 2003 and February, 2005, stating that Plaintiff was  unable to lift more than 10 pounds or sit, stand, or walk for more than one hour in an eight-hour workday as a result of neck spasms (Tr. 78-93, 95-102,104-105, 109-110, 114-115).   Dr. Mohamedally's treating notes show that he also examined Plaintiff on a regular basis between March, 2003 and January, 2007 (Tr. 129-169).

In July, 2003, neurologist M.N. Sabbagh, M.D. examined Plaintiff, noting complaints of constant headaches and nausea since the workplace accident (Tr. 126).  Plaintiff also reported radiating left shoulder, neck, and back pain and memory problems (Tr. 126).  Dr. Sabbagh noted that the neurological examination did not show "definite objective findings" but that the headaches were "compatible with post traumatic headache" (Tr. 127).  An EEG was normal (Tr. 125).  An MRI of the cervical spine was also normal (Tr. 128).  The following month, Dr. Sabbagh recommended physical therapy (Tr. 124).  An October EMG of the left arm showed "mild" symptoms of Carpal Tunnel Syndrome ("CTS") (Tr. 123). The same month, Plaintiff reported continued headaches (Tr. 122).  March, 2004 treating notes state that he experienced ongoing headaches and depression (Tr. 121).  In July, 2004, Plaintiff's Prozac dosage was increased (Tr. 120).  In September, 2005, Dr. Sabbagh noted that Plaintiff had lost his insurance and was not taking his medication (Tr. 119).  Plaintiff reported one to two "headache attacks" per week (Tr. 119).  Dr. Sabbagh remarked that Plaintiff experienced "a degree of depression" (Tr. 119).

-4-

A June, 2006 MRI of the left shoulder showed tendinosis or a partial muscle tear (Tr. 173). An MRI of the cervical spine was unremarkable (Tr. 174). In April and June, 2007, Dr. Mohamedally refilled prescriptions for Tylenol 4 and Xanax (Tr. 217, 219).

In February, 2008, Dr. Mohamedally, noting that he had not examined Plaintiff since March, 2007, opined that Plaintiff was temporarily disabled from all work (Tr. 222). In February, 2009, Dr. Mohamedally completed a medical source statement, finding that Plaintiff was "extremely" limited in the ability to understand, remember, and carry out detailed instructions; "markedly" limited in the ability to understand, remember, and carry out simple instructions and withstand typical workplace stressors; and "moderately" limited in the ability to interact with the public (Tr. 223). He found that Plaintiff did not experience significant limitations in the ability to concentrate for up to two-hour increments (Tr. 223). Dr. Mohamedally precluded all pushing, pulling, and lifting above 10 pounds (Tr. 223). He found that Plaintiff was capable of less than two hours of standing and walking each day and required work with a sit/stand option (Tr. 224).

### 2. Non-Treating Sources

In March, 2007, S. L. Schuchter, M.D. examined Plaintiff on behalf of the SSA (Tr. 183-189). Plaintiff stated that he had ongoing headaches and neck and arm pain (Tr. 183). He reported taking Tylenol 4 up to two times a day as well as Flexeril and Xanax (Tr. 183). Dr. Schuchter found posttraumatic headaches, chronic neck pain "with questionable radiculopathy," and low back pain (Tr. 184). Dr. Schuchter observed that Plaintiff's manipulative and postural abilities were weaker on the left (Tr. 185). Plaintiff demonstrated a reduced range of spinal motion but an otherwise normal range of motion (Tr. 187). The following month, a Physical Residual Functional Capacity Assessment by a non-examining source found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or

walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 190). Plaintiff was deemed able to climb, balance, stoop, kneel, crouch, and crawl on an occasional basis (Tr. 191). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 192-193). Plaintiff's allegations were deemed "partially" supported by the treating records (Tr. 194). The assessor disagreed with Dr. Mohamedally's walking and lifting restrictions, noting that Plaintiff exhibited a normal gait and grip strength (Tr. 195).

The same month, psychologist Carrie Neubecker conducted a psychological examination of Plaintiff on behalf of the SSA (Tr. 197-200). Plaintiff reported irritability, problems sleeping, anxiety, and constant headaches (Tr. 197). He admitted to occasional marijuana use (Tr. 198). Neubecker noted that Plaintiff's affect was good (Tr. 199). She diagnosed Plaintiff with a depressive disorder, assigning him a GAF of 55 with a "guarded" prognosis[2] (Tr. 200).

Also in April, 2007, Ashok Kaul, M.D. completed a non-examining Psychiatric Review Technique, finding the presence of an affective disorder (depression) and a substance abuse disorder (alcohol) (Tr. 201, 204, 209). Under the "'B' Criteria," Dr. Kaul found moderate difficulties in maintaining concentration, persistence, or pace (Tr. 211). A Mental Residual Functional Capacity Assessment, also completed by Dr. Kaul, found that Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions and maintain attention for extended periods (Tr. 214). Dr. Kaul concluded that Plaintiff was able to "understand, remember and carry out simple instructions on a sustained

---

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

basis and is capable of unskille[d] work" (Tr. 215).

## C. Vocational Expert Testimony

VE Stephanee Leech found that Plaintiff's former jobs as a carpet installer, meter installer, and water purification installer were exertionally heavy and unskilled; material handler, heavy/unskilled; mover, very heavy/semiskilled; car stereo installer, medium-heavy/ semiskilled; and auto mechanic/tow truck driver, medium-heavy/skilled[3] (Tr. 44, 248). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work history:

> "[The] individual has the following residual functional capacity, light work, no overhead reaching with the left upper extremity, which is the non-dominant extremity, simple routine tasks only, low stress environment. By that, I mean minimal changes in the work place setting and no more than occasional affect with the general public. Given those limitations, is there work an individual could perform, and if so, please tell me what that work would be, along with the occupational title and number of jobs available in the region. By region, I mean the [S]tate of Michigan

(Tr. 249). The VE testified that given the above limitations, the individual could perform the work of a inspector (4,500 jobs in the regional economy); packer (3,800); and assembly positions (2,500) (Tr. 249). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 249). The ALJ then added the following hypothetical limitations:

> "as a result of pain primarily from headache. That individual – and residuals of a closed head injury including, but not limited to, anxiety, loss of memory

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

-7-

> . . . loss of impulse control. That individual cannot sustain sufficient
> concentration, persistence [and] pace, and doing even simple routine tasks on
> a regular continuing basis. By that I mean eight hours a day, five days a week,
> 40 hours a week. Given those limitations, is there work an individual could
> perform, and, if so, please tell me what that work would be along with the
> information that I requested in my previous hypothetical"

(Tr. 250). The VE replied that the additional limitations would preclude all work (Tr. 250).

### D.      The ALJ's Decision

Citing Plaintiff's medical records and testimony, ALJ Christensen found that although
Plaintiff experienced the severe impairments of "status post head injury (with residual post-
traumatic headaches), left shoulder tendonitis, depression and history of alcohol abuse," none
of the conditions met or medically equaled one of the impairments found in Part 404
Appendix 1 Subpart P, Appendix No. 1 (Tr. 14-16). The ALJ found that Plaintiff retained
the following Residual Functional Capacity ("RFC"):

> [T]o perform light work . . . except no overhead reaching with the non-
> dominant left upper extremity; performing simple routine tasks in a low stress
> environment (by that I mean minimal changes in workplace settings) and no
> more than occasional contact with the general public

(Tr. 17).

Consistent with the VE's job findings, the ALJ determined that although
Plaintiff was unable to perform any of his former jobs, he could work as an inspector,
packer, and assembler (Tr. 18-19).

In support of the non-disability finding, the ALJ found that Plaintiff's
"statements concerning the intensity, persistence and limiting effects" of his
conditions were "not credible to the extent they [were] inconsistent with the residual
functional capacity assessment" (Tr. 18). The ALJ noted that Plaintiff had not sought
recent treatment for headaches or neck and shoulder pain (Tr. 18). He rejected Dr.
Mohamedally's finding that Plaintiff was disabled, stating that the treating physician's

-8-

opinion was unsupported by objective testing (Tr. 18). The ALJ noted that EKG and EEG testing yielded unremarkable results (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues that the hypothetical question posed to the VE did not reflect his moderate limitations in concentration, persistence, or pace ("CPP"). *Plaintiff's Brief* at 6-13, *Docket #8* (*citing* Tr. 16, 248-249).  Citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994), Plaintiff contends that the hypothetical's failure to address his moderate CPP deficiencies mandates remand.  *Plaintiff's Brief* at 6-13.  On a related note, Plaintiff argues that the ALJ erred by not including Dr. Mohamedally's February, 2009 findings in the hypothetical question to the VE.  *Id.* at 13-17.

Because the question of whether the ALJ erred in rejecting Dr. Mohamedally's opinion bears on the adequacy of the hypothetical question to the VE, it will be addressed first.

### A.  The Treating Physician Analysis

Plaintiff argues that the ALJ overlooked Dr. Mohamedally's February, 2009 psychological assessment.  *Plaintiff's Brief* at 15 (citing Tr. 223).  He points out that the

February, 2009 findings are consistent with Dr. Mohamedally's numerous earlier evaluations stating that Plaintiff was unable to work. *Id.* at 15. He also contends that the ALJ did not provide sufficient reasons for rejecting Dr. Mohamedally's opinion. *Id.*

Contrary to this argument, the ALJ's rejection of Dr. Mohamedally's opinion does not contain substantive or procedural error.[4] Plaintiff is incorrect that the ALJ did not address the February, 2009 psychological findings (Tr. 16, 18). The ALJ, referring to the medical source statement, noted that "[t]here is not indication [of] any recent treatment (or need for treatment) for any psychological problems. [Plaintiff] did not appear depressed . . . at the time of the hearing" (Tr. 18). The administrative decision also includes a discussion of Dr. Mohamedally's treating records and the reasons why his opinions were rejected (Tr. 15-16, 18). The ALJ's observation that Dr. Mohamedally's opinion of Plaintiff's physical limitations was not corroborated by objective medical testing or the record as a whole is also well supported. For example, the treating physician's finding that Plaintiff was unable to walk more than two hours a day is contradicted by Plaintiff's activities and consultive source observations that he demonstrated a normal gait and no lower extremity weakness (Tr. 186, 188). The ALJ noted that Plaintiff's claims of disabling neurological or cognitive problems

---

[4] "If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue, 573* F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Circuit 2004); 20 C.F.R. § 404.1527(d)(2). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004), provided that s/he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2). In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

were unsupported by EKG or EEG testing (Tr. 18).  Contrary to Plaintiff's argument that the import of Dr. Mohamedally's earlier disability opinions were ignored, the administrative opinion discussed both Plaintiff's treating history and Dr. Mohamedally's earlier findings (Tr. 15-16).  Having properly discounted the treating physician's assessment, the ALJ was not required to include it in the hypothetical question to the VE.  *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994).

### B.  The Hypothetical Question

However, Plaintiff is correct that the ALJ's failure to account for his moderate deficiencies in CPP in the question to the VE presents grounds for remand.

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments.  *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987).  While the Sixth Circuit has  rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments."   *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).   Moderate deficiencies in CPP suggest substantial limitations which must be acknowledged in the hypothetical question. *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.).   The failure to account for moderate deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error.  *Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 516 -517 (6th Cir. 2010).

Here, the ALJ found that Plaintiff's limitations in CPP were moderate (Tr. 16).  However, the hypothetical limitation of "simple routine tasks" and "minimal changes in the work place setting" did not fully account for these limitations (Tr. 16, 249).  To be sure, the ALJ was not required to use the phrase "moderate deficiencies in concentration, persistence,

-12-

and pace" in the hypothetical to avoid remand. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). However, the limitations of "simple routine tasks," "minimal changes," or other synonymous phrases are generally insufficient to account for moderate concentrational impairments. *See Bankston v. Commissioner,* 127 F.Supp.2d 820, 826 (E.D.Mich.2000)(Zatkoff, J.)("simple tasks" insufficient to account for concentrational deficiencies occurring "often"; *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007)(Roberts, J.); *Edwards, supra,* F.Supp.2d at 931; *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D.Or.1999); *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir.1996).

The ALJ's failure to address Plaintiff's moderate pacing deficiencies by restricting assembly line or other quota driven work constitutes reversible error. *Edwards,* at 931. Defendant cites *Smith, supra,* for the proposition that the terms "simple routine tasks" and "minimal changes in the work place setting" were sufficient to account for Plaintiff's limitations. *Defendant's Brief* at 8 (citing *Smith,* 307 F.3d at 379). However, in *Smith,* the Sixth Circuit noted that the ALJ had accounted for the claimant's moderate CPP deficiencies by precluding high quota work. *Id.* In contrast here, the terms "simple," "routine," or "minimal changes," with nothing more, cannot be construed to address moderate pacing deficiencies (Tr. 249). The failure to account for Plaintiff's moderate *pacing* deficiencies is particularly critical given that two of the three jobs identified by the VE, packer and assembler, would include quota requirements (Tr. 249).

Defendant points out that the Dr. Kaul, whose findings were relied upon for the ALJ's "moderate" CPP finding also found that Plaintiff was capable of performing unskilled work. *Defendant's Brief* at 12 (citing Tr. 215). However, Dr. Kaul did not find that Plaintiff was capable of *all* unskilled work (Tr. 215). To the contrary, he found that Plaintiff also

experience moderate difficulty maintaining attention and concentration for extended periods (Tr. 213). While it is certainly possible that Plaintiff was capable of *some* work, the practical effect of the ALJ's failure to fully address the moderate CPP deficiencies is that the VE's job findings would likely be modified or eliminated if the hypothetical question were amended to include all limitations created by moderate concentrational problems. The VE's job findings, made in response to an incomplete set of limitations, does not constitute substantial evidence. *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.). Because Defendant has not met its burden at Step Five of the sequential analysis, the case must be remanded.

The final question is whether to remand to the administrative level for an award of benefits or further fact-finding. Because Plaintiff has shown a strong but not "overwhelming" case for disability, the errors discussed herein, a remand for further administrative proceedings, including a properly crafted RFC and hypothetical question, and further testimony from a VE, is the appropriate remedy. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994).

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be DENIED [Doc. #13] and Plaintiff's motion [Doc. #8] GRANTED to the extent that the case be remanded to the administrative level for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further

right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: May 9, 2012


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on May 10, 2012.

s/Johnetta M. Curry-Williams
Case Manager

-15-